IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 3:19CR36–HEH–1
)
TITUS LEE, )
)
       Petitioner. )

## MEMORANDUM OPINION
(Denying 28 U.S.C. § 2255 Motion)

Titus Lee, a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 170).[1] Lee demands relief on the following grounds:[2]

| | |
|---|---|
| Claim One: | "Ineffective assistance/deliberate false representation and disregard for procedural duty." (ECF No. 170, at 3.) |
| Claim Two: | "Criminal coercion, criminal contempt, harmful intent." (*Id.* at 3–4.) |
| Claim Three: | "Misjoinder/prejudicial joinder of defendants and offenses." (*Id.* at 4.) |

Lee also filed three documents entitled, "Rule 52 Harmless and Plain Error (a) (b) (c)" (ECF No. 174), "Rule 32 Sentencing and Judgment (a) (b) (c) and (f) (1) (b)" (ECF No. 175), and "Rule 14 (a) Relief from Prejudicial Joinder" (ECF No. 177). None of

---

[1] The § 2255 Motion has a cover page identifying it as a "Rule 33(a) New Trial;" however, what follows is the typewritten § 2255 Motion. (ECF No. 170, at 1–2.) The Court has previously denied a similar cursory Rule 33 Motion from Lee, and to the extent that he intends this submission to be a separate motion, it will be denied.

[2] The Court corrects the capitalization, punctuation, and spacing in quotations from Lee's submissions. The Court employs the pagination assigned by the CM/ECF docketing system.

these rules cited by Lee provide him with any means for postconviction relief and the Court is inclined to deny each summarily.³ Nevertheless, in its Response, the Government has generously construed these rambling submissions as supplements to Lee's § 2255 Motion. (*See* ECF No. 191, at 5.) The Government construes Lee to raise these additional three claims:

> Claim Four: The Court failed to ensure that there was a factual basis for Lee's guilty plea.
>
> Claim Five: Ineffective assistance of counsel because counsel failed to accurately inform Lee of the potential length of sentence he could receive and that the sentence was unfairly high.
>
> Claim Six: The Court failed to inform Lee that he could plead not guilty and instead proceed to trial.

(*Id.*) Lee has filed a reply. (ECF No. 195.) As discussed below, Lee's claims are rambling, lacking in any factual basis, and are belied by the record. For the reasons set forth below, Lee's § 2255 Motion will be denied.

## I. PROCEDURAL HISTORY

### A. Indictment and Guilty Plea

On March 5, 2019, a grand jury charged Lee with eleven counts of a seventeen-count Indictment. Specifically, Lee was charged with: distribution of a mixture and substance containing a detectable amount of cocaine base (Count One); seven counts of distribution of a mixture and substance containing a detectable amount of heroin and/or

---

³ Lee has inundated the Court with frivolous motions. The Court denied each because Lee failed to show how any of the identified rules authorized any action in this closed criminal action. (*See* ECF Nos. 121, 143, 156.)

fentanyl (Counts Two through Six and Count Eight); and, four counts of possession of a firearm by a convicted felon (Counts Ten through Twelve and Seventeen). (ECF No. 3, at 1–8.)

On June 13, 2019, Lee pled guilty to Counts One through Three, Six, Eight, Ten and Twelve, and the Government agreed to dismiss Counts Four, Five, Eleven, and Seventeen. (ECF No. 49 ¶¶ 1, 6.) In his Plea Agreement, Lee agreed that he was pleading guilty because he was in fact guilty of the charged offenses and "admit[ed] the facts set forth in the statement of facts filed with this plea agreement and agree[d] that those facts establish [his] guilt of the offense beyond a reasonable doubt." (*Id.* ¶ 3.) Lee agreed that "[t]he maximum penalties for Counts One through Three, Count Six, and Count Eight (the drug trafficking offenses) are a maximum term of 20 years of imprisonment," that "[t]he maximum penalties for Counts Ten and Twelve, the firearm offenses, are a maximum term of 10 years of imprisonment" (*id.* ¶ 1), and that he understood "that the Court has jurisdiction and authority to impose any sentence within the statutory maximum . . . ." (*id.* ¶ 5). The Plea Agreement provided that the "United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based on the actual sentence." (*Id.*) Lee also agreed that he understood that he was "knowingly waiv[ing] the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined) . . . ." (*Id.* ¶ 6.)

In the Statement of Facts that accompanied the Plea Agreement, Lee agreed that the following facts were "true and accurate, and that had the matter proceeded to trial, the

3

United States would have proved each fact beyond a reasonable doubt" (ECF No. 50, at 7):

> 1. On or about October 25, 2018, November 1, 2018, December 6, 2018, and January 25, 2019, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant, TITUS LEE, did knowingly, intentionally, and unlawfully, distribute controlled substances, to wit: a mixture and substance containing a detectable amount of Cocaine Base, commonly known as "crack," a Schedule II controlled substance (Count One); a mixture and substance containing a detectable amount of Heroin and Fentanyl, and/or Acetylfentanyl, a Schedule I and II controlled substance and a Fentanyl Analogue, respectively (Counts One through Three, Count Six, and Count Eight) either alone, or while aided and abetted by another identified individual, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code Section 2.
>
> 2. On or about November 13, 2018 and January 3, 2019, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant, TITUS Lee, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: a felony, knowing that he was prohibited from possessing firearms and ammunition, did knowingly, intentionally, and unlawfully possess firearms and ammunition, to wit: an Iberia Model JCP .40 caliber semi-automatic pistol bearing serial number 7254976 (as set forth in Count Ten of the pending Indictment), and a Garate Anitua y Cia Detective Special .38 caliber revolver with no serial number; assorted .38 caliber ammunition; a Rohn Model RG10 .22 caliber revolver bearing serial number 1198884; and assorted .22 caliber ammunition (as set forth in Count Twelve of the pending Indictment), all in and affecting interstate or foreign commerce in violation of Title 18, United States Code, Section 922(g)(1).
>
> 3. In 2017, federal, state, and local law enforcement officers began and investigation into the illegal distribution of narcotics and the illegal possession and sale of firearms occurring in the Petersburg, Virginia, metropolitan area. During the course of this investigation, law enforcement became aware of illegal activities involving TITUS LEE and others.
>
> 4. On October 25, 2018, in the Eastern District of Virginia and within the jurisdiction of the Court, the defendant, TITUS LEE, did knowingly, intentionally and unlawfully distribute a controlled substance which was later analyzed and found to be a mixture and substance containing a detectable amount of Cocaine Base, commonly known as "crack." LEE sold this substance to a Confidential Source (hereafter, CS), in exchange for United States currency. On this same date, in the Eastern District of Virginia and within the jurisdiction of this Court, TITUS LEE, aided and abetted by

another individual identified as A.W., did knowingly, intentionally, and unlawfully distribute, and cause to be distributed, a controlled substance which was later analyzed and found to be a mixture and substance containing a detectable amount of Heroin, a Schedule I controlled substance, and Fentanyl, a Schedule II controlled substance. LEE distributed these narcotics to the CS in exchange for United States currency as set forth in Counts One and Two of the pending Indictment.

5. On November 1, 2018, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant, TITUS LEE, aided and abetted by another individual, identified as A.W., did knowingly, intentionally, and unlawfully distribute a controlled substance with was later analyzed and found to be a mixture and substance containing a detectable amount of Heroin, a Schedule I controlled substance, and Fentanyl, a Schedule II controlled substance. LEE sold these narcotics to the CS in exchange for United States currency, as set forth in Count Three of the pending Indictment.

6. On December 6, 2018, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant, TITUS LEE, did knowingly, intentionally, and unlawfully, distribute a controlled substance which was later analyzed and found to be a mixture and substance containing a detectable amount of Heroin, a Schedule I controlled substance; Fentanyl, a Schedule II controlled substance; and Acetylfentanyl, a Fentanyl analogue. LEE sold these narcotics to the CS in exchange for United States currency as set forth in Count Six of the pending Indictment.

7. On January 25, 2019, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant, TITUS LEE, aided and abetted by another individual identified as M.J., did knowingly, intentionally, and unlawfully distribute, and aid and abet in the distribution of a controlled substance which was later tested and found to be a mixture and substance containing a detectable amount of Fentanyl, a Schedule II controlled substance. During this transaction, LEE arranged for M.J. to supply narcotics to the CS by contacting M.J. After M.J. indicated to LEE that he had the narcotics, M.J. advised LEE to meet at M.J.'s residence. LEE and the CS traveled to M.J.'s residence where M.J. told the CS that the price for the drugs was $160.00. LEE told the CS that he had the narcotics for the CS. This transaction is set forth in Count Eight of the pending Indictment.

8. Prior to and after each of the described narcotics transactions, the CS was searched for illegal contraband and United States currency with negative results. After each controlled purchase, the suspected narcotics were turned over to law enforcement.

9. The narcotics were secured and then transferred by law enforcement to the Drug Enforcement Administrations Mid-Atlantic laboratory for testing. Laboratory analysis determined the following:

- On or about October 25, 2018 LEE distributed 3.08 grams of a mixture and substance containing a detectable amount of cocaine base, commonly known as "crack," a Schedule II controlled substance; and he did distribute and aid and abet in the distribution of .9959 grams of a mixture and substance containing a detectable amount of Heroin, a Schedule I controlled substance, and Fentanyl. A Schedule II controlled substance.
- On or about November 1, 2018, LEE distributed and/or aided [sic] in the distribution of 2.00 grams of a mixture and substance containing a detectable amount of Heroin, a Schedule I controlled substance, and Fentanyl, a Schedule II controlled substance.
- On or about November 14, 2018 LEE distributed and/or aided and abetted in the distribution of 1.93 grams of a mixture and substance containing Fentanyl, a Schedule II controlled substance; and Acetyl fentanyl, a Schedule I controlled substance and a Fentanyl analogue.
- On December 6, 2018, LEE distributed 2.15 grams of a mixture and substance containing Fentanyl, a Schedule II controlled substance; Acetyl fentanyl, a Schedule I controlled substance and a Fentanyl analogue; and Heroin, a Schedule I controlled substance.
- On January 25, 2019, LEE, who believed he was distributing heroin, distributed any aided and abetted in the distribution of 2.1 grams of Fentanyl, a Schedule II controlled substance, and Acetyl fentanyl, a Schedule I controlled substance and a Fentanyl analogue.

10. In addition, TITUS LEE did possess and sell the firearms as described in Counts Ten and Twelve of the pending criminal Indictment to a CS on November 13, 2018 and January 3, 2019, in exchange for United States currency.

11. With regard to Counts Ten and Twelve of the pending Indictment, the parties agree that the Iberia Model JCP .40 caliber semiautomatic pistol bearing serial number 7254976; the Garate Anitua y Cia Detective Special .38 caliber revolver; and the Rohn Model RG10 .22 caliber revolver bearing serial number 1198884, as well as the assorted .38 caliber ammunition and .22 caliber ammunition were each manufactured outside of the Commonwealth of Virginia and as such, had traveled in interstate or foreign commerce.

12. Prior to each firearm transaction, the CS was searched by law enforcement for contraband, firearms, and United States currency with negative results.

13. Each of the transactions involving the distribution of narcotics, and the possession and sale of firearms and ammunition by LEE to the CS, was audio and video recorded. After each firearm transaction was

6

completed, the CS turned the firearm(s) and ammunition over to law enforcement for further processing, which included examining and test firing the weapon(s), confirming the make, model, and serial number of each of the weapons, and conduction an interstate nexus examination.

14. The parties stipulate and agree that prior to October 2018, TITUS LEE knew he was prohibited from possessing firearms and ammunition as a result of his having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, to wit: a felony.

15. In addition, the parties agree that each of the firearms described in the Indictment and as set forth herein is a firearm within the meaning of the law in that each was designed to expel a projectile by the action of an explosive.

16. The Statement of Facts includes only those facts necessary to support the Plea Agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

17. The actions of the defendant as recounted herein were in all respects knowing and deliberate, and were not committed by accident, mistake, or other innocent reason.

(*Id.* at 1–7.)

During the Rule 11 proceedings, Lee agreed that he had a thorough opportunity to discuss his case with his attorney and that he was entirely satisfied with his attorney's services. (ECF No. 130, at 5–6.) Lee agreed that he understood the seven charges to which he was pleading guilty and that his attorney had explained to him what the Government must prove with respect to each charge. (*Id.* at 6–7.) Lee also agreed that he understood that the Government would have to prove each element beyond a reasonable doubt and that he understood what that term meant. (*Id.* at 7.) Lee indicated that he was pleading guilty because he was indeed guilty of each of the seven charges and that he had read and understood his Plea Agreement. (*Id.* at 8–9.) Lee agreed that he understood that there was no agreement with respect to sentencing in his Plea Agreement

7

and therefore he understood he was "taking [his] chances" on whatever sentence he received. (*Id.* at 10.)

Lee averred that he was entering into his plea freely and voluntarily and that no one had promised anything outside of the written agreement or pressured him into taking the plea. (*Id.* at 11–12.) Lee volunteered that he faced a maximum sentence of twenty years on the drug charges and a maximum of ten years on the firearm charges. (*Id.* at 15.) Lee agreed that his attorney had reviewed the sentencing guidelines with him, but also agreed that if his attorney's educated estimation of his guidelines range was incorrect, that was not a ground to withdraw his guilty plea. (*Id.* at 16, 18.) Lee agreed that he understood that he had waived his right to appeal including "if [he] receive[d] 20 years on each of these counts." (*Id.* at 18–19.)

Lee read the Statement of Facts, signed it, and agreed that it was correct and that he understood it. (*Id.* at 19–20.) After Lee agreed that he had no further questions for either the Court or his attorney and stated that he was guilty of each charge, the Court accepted the guilty pleas, finding that they were voluntarily, knowingly, and intelligently entered and supported by an independent basis of fact. (*Id.* at 20–22.)

B.  **Sentencing**

Prior to sentencing, a Presentence Report ("PSR") was prepared. (ECF No. 81.) Lee's Base Offense Level under Chapter Two of the United States Sentencing Guidelines ("USSG") was 36, because the offense involved eight or more firearms, one firearm had an obliterated serial number, Lee engaged in the trafficking of firearms, and Lee possessed a firearm in connection with another felony offense, to wit: Possession with

intent to distribute cocaine/heroin/fentanyl. (*Id.* ¶¶ 46–50, 54; *see* USSG § 2K2.1(b)(1)(B), (b)(4)(B), (b)(5), (b)(6)(B).) The PSR recommended no Chapter Four enhancements, and with a three-level reduction for acceptance of responsibility, Lee's Total Offense Level was 33. (*Id.* ¶¶ 55–58.) Lee qualified for a criminal history score of III based on his extensive criminal history. (*Id.* ¶ 90.) Lee's sentencing guidelines range was 168 to 210 months on Counts One through Three, Six, and Eight, and capped at a restricted range of 120 months for Counts Ten and Twelve. (*Id.* ¶ 139.) Defense counsel noted objections to two of the Chapter 2 enhancements including to the four-level enhancement for conduct that involved eight firearms, arguing that Lee should be responsible for less than that amount; and to the four-level enhancement for possessing a firearm in connection with the drug distribution offense. (ECF No. 85, at 3–5; *see* ECF No. 131, at 5–8.) Counsel also filed a motion for a variance sentence of 84 months. (ECF No. 86, at 1.)

During sentencing, the Court overruled Lee's objections to the Chapter 2 enhancements. (ECF No. 131, at 10.) After considering a host of relevant factors, including his involvement in a significant crime ring, his extensive criminal history, and testimony about his mental disabilities, the Court found a downward variance inappropriate, and sentenced Lee to 192 months of incarceration on Counts One through Three, Six, and Eight, and concurrent 120-month sentences on Counts Ten and Twelve. (*Id.* at 33–38.) The Court explained that, "if it weren't for your mental disabilities and the evidence I heard from your mother today, and the recommendation of the United States, I was going to give you the high-end of the guidelines, quite frankly. And you

9

deserve every day of it. But my judgment is tempered a bit by the government's recommendation and your mother's testimony today." (*Id.* at 37.) On September 17, 2019, the Court entered judgment against Lee. (ECF No. 98.)

Lee filed a Notice of Appeal on March 16, 2020.[4] On February 15, 2021, the United States Court of Appeals for the Fourth Circuit dismissed his appeal as untimely. (ECF No. 169, at 2.) On March 15, 2021, the Court received the instant § 2255 Motion.[5]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component

---

[4] Lee also filed his first § 2255 motion on the same date. (ECF No. 120.) After directing Lee to show cause why he should be permitted to pursue a § 2255 motion while his appeal was pending, the Court dismissed the § 2255 motion without prejudice until the appeal was resolved. (ECF Nos. 124, 128, 143.)

[5] The Government first argues that Lee's § 2255 Motion is untimely because it was filed more than one year after his conviction became final and the untimely filing of a notice of appeal does not toll the limitation period. (ECF No. 191, at 6–8.) However, Lee's first § 2255 motion was timely filed, and the timeliness analysis is complicated by the fact that the Court dismissed Lee's first § 2255 motion because his appeal was pending. Nevertheless, the Court need not engage in an extensive discussion of the timeliness of Lee's § 2255 Motion because his claims clearly lack merit.

10

requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). An assertion by Washington that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Therefore, "in the absence of extraordinary circumstances, allegations in a § 2255 motion

that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted) (citations omitted). Accordingly, the Fourth Circuit has admonished that "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22. Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

### B. Purported Ineffective Assistance Prior to Guilty Plea

In Claim One, Lee argues: "[i]neffective assistance/deliberate false representation and disregard for procedural duty." (ECF No. 170, at 3.) Lee contends that trial counsel provided ineffective assistance because he "was prejudice[d] and bias[ed] towards" Lee, provided Lee with an "unmeritorious defense," and provided Lee with false evidence to induce his guilty plea. (*Id.*) However, Lee offers no specific facts that would support his claims. Lee's terse and conclusory allegations fail to demonstrate deficient performance or prejudice under *Strickland*. *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (requiring proffer of mitigating evidence to state claim of ineffective assistance); *see Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas relief appropriate where petitioner "stated only bald legal conclusions with no supporting

12

factual allegations"). Moreover, Lee swore under oath at his Rule 11 proceeding that he was satisfied with counsel's representation, had discussed defenses with counsel, and that he was pleading guilty because he was indeed guilty. Thus, Lee's vague claim is also belied by the record. Accordingly, Claim One lacks merit and will be summarily dismissed.

### C. Sentence-Related Claim

In Claim Five, Lee argues that he received ineffective assistance of counsel because counsel failed to accurately inform Lee of the potential length of sentence he could receive and that the sentence he ultimately received was unfairly high. (ECF No. 174, at 5.) Once again, this claim lacks a basis in fact. In his Plea Agreement and again during the Rule 11 hearing, Lee agreed that he understood that he could receive a sentence of up to a statutory maximum of twenty years for each of the drugs crimes, and up to ten years for each firearm charge. The Plea Agreement also specifically warned that any advice that Lee received from counsel about what sentence he may receive was a "prediction, not a promise," and that under its terms, Lee agreed that he understood "that the Court has jurisdiction and authority to impose any sentence within the statutory maximum." (ECF No. 49 ¶ 5.) Lee also specifically agreed that if he received a harsher sentence than he felt appropriate, that was not a valid reason to challenge his guilty plea. (*See id.*)

During the Rule 11 hearing, Lee volunteered that he faced a maximum sentence of twenty years on the drug charges and a maximum of ten years on the firearm charges. (ECF No. 130, at 15.) Lee agreed that his attorney had reviewed the sentencing

13

guidelines with him, but also agreed that if his attorney's educated estimation of his guidelines range was incorrect, that was not a ground to withdraw his guilty plea. (*Id.* at 18.) Counsel argued that Lee should receive a variance sentence of 84 months. The Court rejected that argument. The fact that Lee received a higher sentence than he believes appropriate does not render counsel's performance ineffective. Lee fails to demonstrate any deficiency of counsel or resulting prejudice and Claim Five will be dismissed.

## III. CLAIMS BARRED BY VALIDLY ENTERED GUILTY PLEA

In Claim Two, Lee argues: "[c]riminal coercion, criminal contempt, harmful intent." (ECF No. 170, at 3–4.) The Court fails to discern what Lee argues here except that his criminal proceedings, including his interactions with federal agents, the prosecutor, and defense counsel, were unfair. Once again, these allegations are too vague to state a claim for relief. Moreover, "[i]t is well-established that a voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations." *Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1294 (4th Cir. 1992) (citing *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973)). Neither Lee nor the record plausibly suggest any reason to question the validity of his guilty plea. Accordingly, Lee's claim that his criminal proceedings were unfair is foreclosed by his validly entered guilty plea. Accordingly, Claim Two will be dismissed.

In Claim Three, Lee argues: "[m]isjoinder/prejudicial joinder of defendants and offenses." (ECF No. 170, at 4.) Lee contends that "the defendant was intentional[ly] and with constructive malice joindered [sic] with others to form a show trial of an illegal use

14

of a criminal suspect classification of an African-American street gang with disregards for the function of the rule of law and the Constitution." (*Id.*) The Court believes that Lee intends to argue that he was not involved in a distribution ring with the other individuals who were indicted with Lee as co-defendants. However, this claim is belied by the record. In conjunction with his guilty plea, Lee agreed that the facts set forth in the Statement of Facts that detailed his role, and his co-defendants' roles, were true and correct. Therefore, this claim is once again foreclosed by Lee's validly entered guilty plea. *Fields*, 956 F.2d at 1294 (citation omitted); *see Lemaster*, 403 F.3d at 221. Accordingly, Claim Three will be dismissed.[6]

In Claim Four, Lee argues that the Court "failed to ensure that there was a factual basis for the plea." (ECF No. 174, at 3.) Lee suggests that the Court "did not discuss the facts, did not state the requirements of the statutes, and did not apply the facts to the statutes." (*Id.* at 4.) Little discussion is needed here as Lee's claim is both foreclosed by his validly entered plea agreement and again belied by the record. Accompanying his Plea Agreement, Lee agreed to specific facts set forth in the Statement of Facts that he signed, agreed were true and correct, and agreed that if the matter had gone to trial, would have proved his guilt beyond a reasonable doubt. The Statement of Facts also set forth the elements of each crime that Lee was charged with and the facts that supported

---

[6] The Government generously construes this claim as one of ineffective assistance of counsel for failing to move to sever his trial from that of his co-defendants. (ECF No. 191, at 15–17.) The Court does not read Lee as raising this specific claim. Nevertheless, the Court fails to discern how counsel was ineffective for failing to move to sever, as Lee was clearly engaged in the sale of firearms and drugs with these other individuals, and there was no need to move to sever trial because there was no trial after Lee pled guilty.

his guilt. During the Rule 11 hearing, the Court asked Lee if he had read and understood the Statement of Facts, if he had discussed it with counsel, and if the facts contained therein accurately reflected "what in fact happened." (ECF No. 130, at 19–20.) Lee answered in the affirmative to each of the Court's questions. Finally, the Court advised Lee that, "the statement of facts forms an independent factual basis for your plea of guilty." (*Id.* at 22.) Accordingly, Lee's claim that the Court failed to ensure that there was a factual basis for the plea is belied by the record. Claim Four lacks merit and will be dismissed.

Finally, in Claim Six, Lee argues that the Court never informed Lee that he could plead not guilty and instead proceed to trial with counsel. (ECF No. 175, at 6.) Again, this claim is belied by the record. In the Rule 11 hearing, Lee specifically agreed under oath that he understood that he had "an absolute constitutional right to have this charge tried by a jury." (ECF No. 130, at 12.) The Court reviewed with Lee his right to trial by jury, how the jury would have to find unanimously that Lee was guilty of each charge, what the Government would be required to prove if the matter proceeded to trial, and that he "would be represented by an attorney throughout the trial." (*Id.* at 12–13.) Lee agreed that he understood these rights. (*Id.*) When the Court explained that, "once I accept your plea of guilty in this case, Mr. Lee, there will be no trial in the case," Lee once again agreed that he understood. (*Id.* at 14.) The record conclusively establishes that the Court reviewed Lee's right to a jury trial with him and Lee chose to waive that right. Accordingly, Claim Six lacks merit and will be dismissed.

## IV. REMAINING MOTIONS

In accordance with the above analysis, "Rule 52 Harmless and Plain Error (a) (b) (c)" (ECF No. 174), "Rule 32 Sentencing and Judgment (a) (b) (c) and (f) (1) (b)" (ECF No. 175), and "Rule 14 (a) Relief from Prejudicial Joinder" (ECF No. 177) will be denied. The letter motion requesting a pretrial conference (ECF No. 196) will be denied. As explained to Lee previously (ECF No. 143, at 2), a Rule 60(b) Motion is a civil rule and does not permit Lee to reopen his criminal proceedings. Thus, his Rule 60 motion (ECF No. 215) will be denied. Finally, to the extent that Lee seeks the appointment of counsel with respect to his § 2255 Motion, that request (ECF No. 220) will be denied.

## V. CONCLUSION

For the foregoing reasons, Lee's § 2255 Motion (ECF No. 170) will be denied. Lee's remaining related motions (ECF Nos. 170, at 1, 174, 175, 177, 196, 215, 220) will be denied. The action will be dismissed. A certificate of appealability will be denied.

An appropriate Order shall issue.

/s/
HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: April 11, 2022
Richmond, Virginia